IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UWORLD LLC f/k/a USMLEWORLD LLC, § § § Plaintiff, § § V. § § USMLE GALAXY LLC d/b/a § ARCHER REVIEW, § § Defendant. § | No. 3:23-cv-447-K |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

USMLE Galaxy LLC, doing business as Archer Review ("Archer Review"), filed a motion to dismiss certain claims made by UWorld LLC, formerly known as USMLEWorld LLC ("UWorld"). *See* Dkt. No. 19. UWorld filed a response [Dkt. No. 26] and Archer Review filed a reply [Dkt. No. 32].

United States District Judge Ed Kinkeade has referred this motion to the undersigned United States magistrate judge. *See* Dkt. No. 35.

The undersigned now recommends that the Court grant Archer Review's motion to dismiss for failure to state a claim.

**Background**

This case concerns UWorld's accusation of infringement, theft, and unfair competition against Archer Review. UWorld and Archer Review are test preparation

-1-

companies providing test preparation materials for, among others, nursing students preparing for the National Council Licensure Examination for Registered Nurses ("NCLEX-RN"). *See* Dkt. No. 13 at 3. Both companies provide their students with a bank of practice questions (a "QBank") which contains illustrations and a user interface for navigating it. *See id.* at 7, 11. UWorld launched its QBank in 2015, while Archer Review launched its QBank sometime after that. *See id.*

UWorld asserts that its trade dress ("UWorld's Trade Dress") is "over 2,000 vivid images and lifelike illustrations accompanying its QBank questions, together with a distinctive user interface," and that UWorld's Trade Dress distinguishes UWorld from other test preparation companies. *Id.* at 7, 10. UWorld also sought copyright protection for some of its QBank questions and illustrations in February of 2023. *See id.*, Ex. C.

In 2022, UWorld accused Archer Review of intentionally copying UWorld's QBank to create its own QBank, as evidenced by many similarities between their QBank questions, illustrations, and user interfaces. *See id.* at 11, 12.

On February 27, 2023, UWorld filed a complaint against Archer Review in this Court. *See* Dkt. No. 1. UWorld filed an amended complaint on March 21, 2023. *See* Dkt. No. 13.

Archer Review then filed this motion to dismiss UWorld's claims under Texas trade dress dilution law, the Texas Theft Liability Act ("TTLA"), and Texas unfair competition law. *See* Dkt. No. 19.

## Legal Standard

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic

recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion

under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

## Analysis

**I.  The Copyright Act preempts UWorld's Texas Theft Liability Act and unfair competition claims to the extent that they are based on allegations of infringing copyrightable materials.**

Section 301 of the Copyright Act preempts state law claims that fall within the scope of federal copyright law. *See* 17 U.S.C § 301. Under Section 301(a),

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether … published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C § 301(a).

The United States Court of Appeals for the Fifth Circuit has articulated a two-pronged test for copyright preemption. The first prong determines whether the claim "falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *Carson*

*v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (quoting *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995)). The second prong determines whether the cause of action "protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Carson*, 344 F.3d at 456. This prong is also known as the "extra element" test. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999).

"[T]he absence of a copyright registration does not preclude the application of the doctrine of preemption that exists under the Copyright Act." *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, 422 Fed. Appx. 344, 348-49 (5th Cir. 2011).

The scope of copyright preemption is broader than the scope of copyright protection. "[O]ne function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if 'subject matter of copyright' includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 596-97 (5th Cir. 2015). "Allowing state law to protect" works not protected by federal copyright law "would undermine the 'deliberate exclusion' of such subject matter from the federal copyright scheme." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 657 (5th Cir. 2017) (quoting *Spear Mktg., Inc.*, 791 F.3d at 596).

### A. Subject Matter

By basing its TTLA and unfair competition claims on the fact that part of its QBank has copyright protection, UWorld implicitly acknowledges that the material falls under the subject matter of copyright and that claims based on infringement of that material could be preempted. Instead of arguing that the copyrighted material is not subject matter which could form the basis for preemption, UWorld argues that the TTLA and unfair competition claims are based on Archer Review's infringement of UWorld's Trade Dress. *See* Dkt. No. 26 at 17. UWorld argues that trade dress is not within the subject matter of copyright and that, if their claims are based on Archer Review's alleged infringement of UWorld's Trade Dress, they are not preempted by copyright. *See id.* at 18.

"The federal Copyright Act does not preempt the federal Lanham Act [which protects trade dress], or vice-versa. In fact, it is common practice for copyright owners to sue for both…. Such a litigation posture has never been disallowed by the courts on grounds of either preemption or impermissible double recovery." *Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 482 (5th Cir. 2003). And so, to the extent that the claims are based on accusations of trade dress infringement, they are not preempted.

But, because the copyrighted material falls under the subject matter of copyright, the undersigned will continue the preemption analysis with respect to claims based on the infringement of that material.

### B. Extra Elements Test

"[I]f the act or acts of [the defendant] about which [the plaintiff] complains would violate both [state] law and [federal] copyright law, then the state right is deemed 'equivalent to copyright.'" *Integrated3d, Inc. v. Aveva, Inc.*, No. 1:17-CV-159, 2017 WL 10185175 at *5 (E.D. Tex. Nov. 16, 2017) (quoting *Alcatel USA, Inc.*, 166 F.3d at 787). But, if "one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie 'within the general scope of copyright,' and preemption does not occur." *Id.*

Courts in this circuit have already ruled that TTLA and unfair competition do not require proof of elements materially different from a copyright infringement claim. This is because, in cases with facts similar to this case's alleged facts, the claims are, at their core, based on the same allegations as the copyright infringement claim: unauthorized copying. *See Spear Mktg., Inc.*, 791 F.3d at 598 (holding that the "knowingly" *mens rea* requirement under the TTLA did not establish a qualitatively different element from a copyright claim and therefore that the TTLA claim was preempted by the Copyright Act); *Compound Stock Earnings Seminars, Inc. v. Deaton*, No. 3:07-cv-697-L, 2007 WL 9717558 at *5 (N.D. Tex. Oct. 2, 2007) (holding that, where a TTLA claim was based entirely on the same facts as a copyright claim, the TTLA claim was preempted by the Copyright Act); *Alcatel USA, Inc.*, 166 F.3d at 788 (holding that, for that case, the rights protected under federal copyright law and

state misappropriation law, which falls under the umbrella of unfair competition, were the same and that misappropriation was preempted under copyright law); *Worth Beauty LLC v. Allstar Products Group, LLC*, No. 4:17-CV-1682, 2017 WL 5300007 at *11 (S.D. Tex. Nov. 13, 2017) (holding that a common law unfair competition by misappropriation claim was preempted by the Copyright Act to the extent that the claim was based on the alleged copying of the plaintiff's product).

And so, insofar as the claims are based on infringement of copyrightable material, the TTLA and unfair competition claims are preempted.

## II. The Texas Theft Liability Act and unfair competition claims do not survive the motion to dismiss.

Having determined that the TTLA and unfair competition claims are not preempted to the extent that they are based on allegations of trade dress infringement, the undersigned will analyze whether these claims can survive the motion to dismiss as plead.

### A. Texas Theft Liability Act

The TTLA makes "a person who commits theft … liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE § 134.003(a). UWorld pleads that Archer Review has committed theft under Texas Penal Code § 31.03. *See* Dkt. No. 13 at 30.

This statute states that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PEN. CODE § 31.03(a). "'Deprive' means: (A) to withhold property from the owner permanently or

for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner; (B) to restore property only upon payment of reward or other compensation; or (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely." TEX. PEN. CODE § 31.01(2). "'Appropriate' means: (A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or (B) to acquire or otherwise exercise control over property other than real property. TEX. PEN. CODE § 31.01(4). "'Property' means: (A) real property; (B) tangible or intangible personal property including anything severed from land; or (C) a document, including money, that represents or embodies anything of value." TEX. PEN. CODE § 31.01(5).

Courts have found that copying a website or software in such a way that allows the plaintiff continued access to it does not deprive the plaintiff of that property. *See Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 543 (S.D. Tex. 2011) (finding that, although the defendant obtained copies of the plaintiff's software, they did not prevent the plaintiff from retaining copies of the software and thus that the facts could not support a TTLA claim); *cf. Simmonds Equip., LLC v. GGR Intern., Inc.*, 126 F. Supp. 3d 855, 870 (S.D. Tex. 2015) (finding a basis for a TTLA claim when the defendant disabled the plaintiff's website, denying them access to it).

UWorld does not allege that Archer Review's alleged copying of UWorld's QBank or alleged trade dress infringement deprived UWorld of access to or use of

-11-

their QBank. And so UWorld has not pleaded enough facts to state a claim under the TTLA.

UWorld's TTLA claim should be dismissed without prejudice.

### B. Unfair Competition

UWorld frames this claim as a claim for unfair competition. Unfair competition under Texas law "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). Each of these causes of action has a different standard and requires UWorld to plead different facts in order to state a claim.

UWorld should plead a more specific cause of action. As currently pleaded, UWorld has not identified which cause of action it is alleging.

This unfair competition claim should be dismissed without prejudice.

### III. UWorld has not adequately described its trade dress.

"'Trade dress' is distinct from a 'trademark' or a 'service mark.'" *Test Masters Educ. Services, Inc. v. State Farm Lloyds*, 791 F.3d 561, 564-65 (5th Cir. 2015). The term "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Id.* at 565. "The design or packaging of a product may acquire a distinctiveness which serves to identify the

product with its manufacturer or source." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001).

"Unlike copyright law, trade dress law does not protect one's innovation or creativity. It provides further protection to a product when it can be proven that its dress identifies and distinguishes the plaintiff as source." *McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 781 (E.D. Tex. 2006) (cleaned up). Trade dress "can protect a combination of visual elements 'that, taken together, ... may create a distinctive visual impression.'" *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1118 (5th Cir. 1991) (quoting *Falcon Rice Mill v. Community Rice Mill,* 725 F.2d 336, 346 (5th Cir. 1984)), *aff'd sub nom.*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).

"When alleging a trade dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect." *Test Masters Educ. Services, Inc.*, 791 F.3d at 565. "[P]hotographs alone are insufficient to provide notice of the elements of an alleged trade dress." *YETI Coolers, LLC v. Magnum Solace, LLC*, No. 1:16-CV-663-RP, 2017 WL 5515910 at *3 (W.D. Tex. Mar. 30, 2017).

"A growing number of courts have confronted whether trade dress protection can extend to websites, so-called 'web dress' protection." *Test Masters Educ. Services, Inc.*, 791 F.3d at 565. For such protection, "a general description of the site is insufficient." *Bryant v. Matvieshen*, 904 F. Supp. 2d 1034, 1046 (E.D. Cal. 2012). And "a mere cataloguing of a website's features does not give defendants adequate notice

of a plaintiff's trade dress claim." *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702 at *5 (C.D. Cal. Nov. 19, 2010).

A plaintiff must list the elements that make up the trade dress and "also allege that these discrete elements combine into a common 'look and feel' of a website." *Express Lien, Inc. v. Handle, Inc.*, No. CV 19-10156, 2020 WL 3868442 at *5 (E.D. La. July 9, 2020). The elements must be comprehensive of the features a plaintiff seeks to protect. The plaintiff cannot simply list some elements and then "employ[] language suggesting that [the listed components] are only some among many of the elements comprising the alleged trade dress." *Salt Optics, Inc.*, 2010 WL 4961702 at *5 (cleaned up).

"The Fifth Circuit also has held that there must be an allegation of aesthetic similarity to state a 'look and feel' trade dress claim for a website." *Id.* (citing *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 262 (5th Cir. 2017)). But, without more, "an allegation that [the defendant] is using a confusingly similar website is not sufficient to trigger coverage." *Test Masters Educ. Services, Inc.*, 791 F.3d at 567.

UWorld's articulation of its trade dress must be sufficient to support its claim for trade dress dilution. Archer Review argues that UWorld's Trade Dress is inadequately articulated. *See* Dkt. No. 19 at 14.

Under Texas law, "the owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin

another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark." TEX. BUS. & COM. CODE § 16.103.

Texas courts have held that analysis of trade dress infringement under the Lanham Act is the same as an analysis under the Texas trade dress dilution statute, but with a national geographic reach. *See Pengu Swim Sch., LLC v. Blue Legend, LLC*, No. 4:21-CV-1525, 2023 WL 3044607 at *3 n.5 (S.D. Tex. Apr. 21, 2023) ("Because the same standards apply to federal and state law trademark infringement and unfair competition claims, the Court's analysis of the protectability of Plaintiffs' trade dress under the Lanham Act applies to Plaintiffs' trade dress claims under state law for infringement and unfair competition").

In its amended complaint, UWorld defines its trade dress as "over 2,000 vivid images and lifelike illustrations accompanying its QBank questions, together with a distinctive user interface." Dkt. No. 13 at 7. UWorld attaches several images of its QBank and user interface to illustrate this trade dress. *See* Dkt. No. 13, Ex. A. UWorld also gives a side-by-side comparison between their materials and Archer Review's materials. *See* Dkt. No. 13, Ex. B.

While a trade dress can be made up of the "look and feel" of a website, a plaintiff still must list the elements that make up that "look and feel" and describe how they come together to create that "look and feel." *See Express Lien, Inc.*, 2020 WL 3868442 at *5 (finding the plaintiff's amended complaint to adequately plead a trade dress

-15-

after it alleged nine specific elements that it sought to protect in its web dress, including a frequently used font, color for paragraph text, color and boldness for header text, "a short blue dash offset to the left between the header and the paragraph text," and "the in-app layout and user interface and navigation, including, but not limited to, layout, color scheme, color combinations, iconography [and] document description."); *Salt Optics, Inc. v. Jand, Inc.*, No. SACV10828DOCRNBX, 2011 WL 13055856 at *3 (C.D. Cal. Mar. 4, 2011) (finding the plaintiff's pleadings to be adequately amended when the amended complaint contained both "a fixed list of the elements alleged to comprise the website's overall 'look and feel'" and a synthesis of those "elements through a combination of written explanation and graphic images").

UWorld does not provide any of the discrete elements that make up the "look and feel" of its QBank and accompanying user interface. The definition of UWorld's Trade Dress is inadequate to support its claim.

The Court should dismiss without prejudice UWorld's claim for trade dress dilution and grant UWorld a chance to replead that claim to give a sufficient description of its trade dress.

Finally, Archer Review argues in a footnote that, if UWorld cannot adequately articulate its trade dress, it will not be able to support its claims for federal unfair competition, trade dress dilution, TTLA, and unfair competition. *See* Dkt. No. 19 at 16 n.4. The undersigned agrees.

UWorld should be given a chance to replead its claims not only to save its claims for trade dress dilution, TTLA, and unfair competition but to avoid a future motion to dismiss its federal unfair competition claim.

## Recommendation

The Court should grant Defendant's motion to dismiss [Dkt. No. 19] and dismiss Plaintiff's trade dress dilution and Texas Theft Liability Act and unfair competition claims without prejudice and grant Plaintiff 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint to replead its trade dress dilution and Texas Theft Liability Act and unfair competition claims consistent with the recommendation and the conclusions and findings above and should order that, if Plaintiff fails to do so, those claims will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 27, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE