IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UWORLD LLC f/k/a USMLEWORLD LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § § § | No. 3:23-cv-447-K |
| USMLE GALAXY LLC d/b/a ARCHER REVIEW, and TART LABS, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER REGARDING
JURISDICTIONAL DISCOVERY**

Plaintiff UWorld LLC f/k/a USMLEWorld LCC ("UWorld") filed this lawsuit against USMLE Galaxy LLC d/b/a as Archer Review ("Archer Review"). *See* Dkt. No. 1.

Archer Review filed a Motion to Dismiss, which United States District Judge Ed Kinkeade referred to the undersigned Magistrate Judge David Horan for a hearing, if necessary, and to provide proposed findings and recommendations for disposition of the motion under 28 U.S.C. § 636(b). *See* Dkt. No. 19; Dkt. No. 35. After holding a hearing, the undersigned Magistrate Judge David Horan filed his findings, conclusions and recommendations, recommending the Court grant the Motion to Dismiss, which the Court adopted. *See* Dkt. No. 40; Dkt. No. 43; Dkt. No. 47.

UWorld added Tart Labs as a defendant in its second amended complaint. *See* Dkt. No. 54. After a deadline extension, Archer Review filed its original answer to

UWorld's second amended complaint. *See* Dkt. No. 59. Archer Review also filed a counterclaim against UWorld, *see* Dkt. No. 62, and UWorld answered, *see* Dkt. No. 64.

Tart Labs filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, *see* Dkt. No. 67 (the "Motion to Dismiss").

UWorld then filed a Motion for Discovery on Personal Jurisdiction Relating to Defendant Tart Labs, *see* Dkt. No. 70 (the "Motion for Discovery"), which United States District Judge Ed Kinkeade referred to Magistrate Judge David Horan. *See* Dkt. No. 74. The Court stayed the responsive briefing deadlines for Tart Labs's Motion to Dismiss *sua sponte*. *See* Dkt. No. 73.

Tart labs filed a response to the Motion for Discovery, *see* Dkt. No. 75, and UWorld filed a reply, *see* Dkt. No. 76.

For the reasons and to the extent explained below, the Court grants in part and denies in part UWorld's motion for discovery.

## Background

UWorld is a company providing preparatory material for professional licensing exams, including for the NCLEX-RN exam for nursing students. *See* Dkt. No. 54 at 2. Archer Review is a competing company also providing preparatory material for nursing students. *See id.* at 3. Archer Review contracts with Tart Labs to develop its testing platform. *See id.* at 27.

UWorld accuses Archer Review of creating a UWorld account for Tart Labs to copy and imitate UWorld's materials and trade dress. *See id.* at 31-33. UWorld brings a variety of counts under a variety of federal and state acts and common law for

injuries to trade dress, dilution, misappropriation, unfair competition, false designation of origin, infringement, breach of contract, and tortious interference with prospective business relations, among others. *See generally* Dkt. No. 54.

UWorld requests a permanent and preliminary injunction to prevent the alleged continuation of infringement and misappropriation, in addition to other monetary damages. *See id.* at 88-89.

### Legal Standard

When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such jurisdictional discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The decision to allow jurisdictional discovery is within the district court's discretion. *See id.*

"[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (cleaned up).

A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-cv-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly*, 213 F.3d at 855).

The Court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how

those facts would support personal jurisdiction. *See id.*; *see also King v. Hawgwild Air, LLC*, No. 3:08-cv-153-L, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008).

A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction or where the plaintiff is waging a "fishing expedition" into jurisdictional facts. *Combat Zone Corp. v. John/Jane Does 1–13*, No. 3:12-cv-3927-B, 2013 WL 230382, at *2 (N.D. Tex. Jan. 22, 2013).

"But [i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022) (per curiam) (cleaned up).

And multiple federal courts, including district courts in this circuit, "have ruled on jurisdictional discovery requests first raised in response to a motion to dismiss." *Id.* (collecting cases).

However raised, the key consideration remains "whether the requesting party has made specific allegations that the evidence it seeks is likely to support a finding of jurisdiction." *Id.* at *6 (citations omitted); *compare, e.g.*, *Cano v. Assured Auto Group*, No. 3:20-cv-3501-G, 2021 WL 3036933, at *9-*10 (N.D. Tex. July 19, 2021) (concerning the possibility of establishing personal jurisdiction through agency), *with Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) ("Johnson has not met his burden. He has not alleged specific facts that discovery will prove. Instead, he says that discovery would determine 'the extent' of the activities that we

already have said cannot support jurisdiction. We see no reason to confirm Johnson's allegations with discovery when they cannot sustain our power as a matter of law." (citation omitted)).

## Analysis

UWorld states that it has made a preliminary showing of personal jurisdiction because Tart Labs contracted with Archer Review, a Texas company; Tart Labs intentionally accessed UWorld's servers located in Texas; and, in using UWorld's servers, Tart Labs agreed to the forum-selection clause contained in the user agreement. *See* Dkt. No. 70. In the alternative, UWorld argues that the declaration of Tart Labs's founder, Mr. Prabu, attached to Tart Labs's Motion to Dismiss creates material issues of fact that warrant jurisdictional discovery, including Mr. Prabu's statements that "he did not know Archer Review was a Texas resident, Tart labs was indirectly involved with the illustrations used for the 'Archer Review project,' Tart Labs does not have control or have authorization to control Archer Review, [and] Tart Labs has never targeted its advertising or services to individuals or businesses based in Texas." *Id.* at 12. And, if the Court finds UWorld's allegations inadequate to make a preliminary showing of personal jurisdiction, UWorld requests leave to amend its complaint. *See id.* at 11.

Tart Labs responds that UWorld failed to make a preliminary showing of either general or specific jurisdiction, because Tart Labs is not at home in Texas and did not purposefully avail itself of the Texas forum through its contract with Archer Review or by accessing UWorld's servers. *See* Dkt. No. 75.

And Tart Labs argues that UWorld has failed to show jurisdictional discovery is needed because the Motion to Dismiss does not raise any issues of material fact. *See id*. Tart Labs opposes UWorld's request to amend its complaint. *See id*.

I.      UWorld has not made a preliminary showing of general personal jurisdiction.

UWorld has not made a preliminary showing that this Court has general jurisdiction over Tart Labs.

"A court may assert general personal jurisdiction over foreign corporations 'when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).

UWorld's allegations are centered around Tart Labs's contract with Archer Review and access of UWorld, neither of which make a preliminary showing that Tart Labs's interactions with Texas are so continuous and systematic they would be at home in Texas. *See* Dkt. No. 70; Dkt. No. at 8.

II.     UWorld has made a preliminary showing of specific personal jurisdiction.

UWorld asserts that – because Archer contracted with a Texas resident, accessed UWorld's servers in Texas, and used UWorld's website, potentially agreeing to the mandatory forum selection clause – UWorld has made a preliminary showing of personal jurisdiction.

UWorld requests discovery through a deposition and requests for production on a variety of topics including:

- Tart Labs' contacts with the State of Texas, including the travel of relevant Tart Labs representatives to Texas;
- Mr. Prabu's contacts with the State of Texas, including his travel to Texas;
- Dealings between Tart Labs and persons or entities located in Texas;
- Tart Labs' knowledge of UWorld's and Archer Review's presence and services in Texas;
- The formation of the business relationship between Archer Review and Tart Labs;
- Tart Labs' process for development, contributions to, reviewing, and control over Archer Review's Nursing Review Suite;
- Tart Labs' marketing and customer support services provided to Archer Review in Texas;
- Tart Labs' communications with Archer Review (located in Texas); and
- Tart Labs' contributions to Archer Review's responses to UWorld's cease and desist letters.

Dkt. No. 70 at 14.

While any fact by itself may not be enough to establish a preliminary showing of personal jurisdiction, the Court will consider all factual allegations together in making its determination. In doing so, the Court will consider allegations in UWorld's complaint and their motion. *See Valtech Sols., Inc. v. Davenport*, No. 3:15-cv-3361-D, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) (considering plaintiff's petition and motion for leave to conduct jurisdictional discovery in finding a preliminary showing of personal jurisdiction).

UWorld could show personal jurisdiction by demonstrating "the defendant … 'purposefully directed' his activities at residents of the forum, and the litigation … result[ed] from alleged injuries that "ar[o]se out of or relate to" the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, No. 3:03-cv-742-D, 2003 WL 22456806 (N.D. Tex. Oct. 23, 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (cleaned up)). UWorld asserts that Tart Labs

has committed the alleged torts while performing its contract with Archer Review, a Texas entity, and so established minimum contacts with Texas.

Although merely contracting with a Texas resident, by itself, is not sufficient to establish personal jurisdiction, in combination with other factors, it is relevant to the jurisdictional analysis and can, in appropriate circumstances, support the exercise of personal jurisdiction. *See, e.g.*, *MJCM, L.L.C. v. Sky Bank*, Civ. A. H-05-0664, 2005 WL 2121549, at *4-*5 (S.D. Tex. Aug. 31, 2005); *accord Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 373 (5th Cir. 2024) ("[W]hen specific personal jurisdiction is grounded on contractual relations, lower courts must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine 'whether the defendant purposefully established minimum contacts within the forum.'" (cleaned up)).

For example, a "combination of … anticipated, long-term contacts, along with the contract's choice-of-law clause, [can] demonstrate sufficient minimum contacts for this Texas court to exercise specific personal jurisdiction over disputes arising out of the parties' agreements." *MJCM*, 2005 WL 2121549, at *6. And courts have considered the impact of a contract with a Texas resident when the plaintiff "conducted business in Texas, including by intentionally contracting with a Texas company to perform an obligation in Texas, market[ed] its products to Texas residents, maintain[ed] an interactive website with which Texas residents could engage, and initiated contact with Plaintiff on multiple occasions, knowing Plaintiff

is in Texas." *Mindsight Med., LLC v. Golla Ctr. for Plastic Surgery, P.C.*, No. 3:23-cv-1989-S, 2023 WL 7115585, at *2 (N.D. Tex. Oct. 26, 2023) (cleaned up).

But, while "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted," "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 312 (5th Cir. 2007). "Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state." *Id.*

While UWorld's allegation that Tart Labs contracted with a Texas entity is not enough for a preliminary showing of personal jurisdiction, UWorld's allegations that Tart Labs knew Archer Review was located in Texas would support a showing of personal jurisdiction, if UWorld could also demonstrate ways Tart Labs intentionally targeted Texas from the negotiations around the contract and understanding of the future consequences of the contract.

UWorld also states that, by using Archer Review's login to access UWorld's website, Tart Labs agreed to UWorld's user agreement which has a forum selection clause, creating a preliminary showing of personal jurisdiction. *See* Dkt. No. 70 at 13; Dkt No. 76 at 5. Tart Labs does not respond to this argument in its response. *See* Dkt. No. 76.

While more information is needed to determine if Tart Labs is bound by the user agreement so as to show personal jurisdiction, the Court agrees that further

discovery into Tart Labs's knowledge of the user agreement and communications with Archer Lab about the account could demonstrate personal jurisdiction *See* Dkt. No. 70 at 9; Dkt. No. 70-1 at App. 007. And, so, this weighs in favor of UWorld making a preliminary showing of personal jurisdiction.

UWorld also states that its allegations are also based on the fact that "Tart Labs had knowledge and intent to compete with and harm a Texas resident by copying its materials from a server in Texas." Dkt. No. 76 at 6. The act of accessing servers in a forum state, without additional contacts, is not a basis for personal jurisdiction. *See Ryan Consulting LLC v. FirstBank of Puerto Rico*, No. 1:23-CV-00609-RP, 2023 WL 5729952, at *5 (W.D. Tex. Sept. 5, 2023), *rep. and rec. adopted*, No. 1:23-CV-609-RP, 2023 WL 6629825 (W.D. Tex. Oct. 11, 2023) ("The location of servers in Texas is not an adequate basis for personal jurisdiction, as the location of servers could be merely fortuitous. *See, e.g.*, *Chang v. Virgin Mobile USA, LLC*, No. 3:07-cv-1767-D, 2009 WL 111570, at *4 (N.D. Tex. Jan 16, 2009) (noting courts have rejected argument that physical location of computer servers can be basis for personal jurisdiction).").

To the argument that Tart Labs intended to harm a Texas resident, "defendant's knowledge that a party will suffer foreseeable harm in the forum 'impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.' The proper question 'is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'" *RapidDeploy, Inc. v. RapidSOS, Inc.*, No. 1:22-CV-

00612-LY, 2022 WL 3045649, at *3 (W.D. Tex. Aug. 1, 2022), *rep. and rec. adopted*, No. 1:22-CV-612-LY, 2022 WL 17814234 (W.D. Tex. Aug. 26, 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 289-90 (2014)) (internal citations omitted). While the location that UWorld experienced the injury in is not dispositive, UWorld alleges that Tart Labs sent infringing material "to Archer Review in Texas to compete with UWorld in Texas." Dkt. No. 70 at 8. If Tart Labs knowingly and expressly aimed its infringing activities at Texas, that would support a showing of personal jurisdiction.

Considering UWorld's arguments together, UWorld has shown that Tart Labs's conduct has connected it to Texas by contracting with Archer Review, a Texas company, developing materials to be used by Archer Review, and committing alleged tortious conduct through its agreement with Archer Review. And so, UWorld has made a preliminary showing of personal jurisdiction.

Because the Court finds UWorld has made a preliminary showing of personal jurisdiction, it will not grant UWorld leave to amend its complaint at this time.

III.    UWorld is entitled to limited jurisdictional discovery.

UWorld points to factual disputes created by Mr. Prabu's declaration attached to the motion to dismiss, in which he allegedly claimed:

> 1) he did not know Archer Review was a Texas resident; 2) Tart Labs was indirectly involved with the illustrations used for the "Archer Review project;" 3) Tart Labs does not control or have authorization to control Archer Review; 4) Tart Labs has never targeted its advertising or services to individuals or businesses based in the United States, including Texas; and 5) he merely traveled to Dallas, Texas for personal reasons, yet stayed in the home of Archer Review's CEO Kathrik Kodurur during this time.

Dkt. No. 70 at 12.

UWorld synthesizes some of these arguments to state that "Tart Labs was integral in the Development and Distribution of Archer Review's Infringing Materials," "Tart Labs had formal roles with Archer Review beyond those stated in the declaration," and "Tart Labs' proprietor traveled to the United States, and specifically to Texas, at the invitation of Archer Review and for the purposes of supporting Archer Review." *Id.* at 13-15.

Tart Labs first argues that whether it knew about Archer Review's principal place of business in Texas does not relate to whether Tart Labs has minimum contacts with the State of Texas. But, as this Court has already discussed, while contracting with a Texas resident is insufficient to establish personal jurisdiction, a contract with a Texas resident can still be relevant to the analysis of personal jurisdiction. *See Nafta Traders, Inc. v. Hewy Wine Chillers, LLC*, No. 3:18-cv-2773-L, 2018 WL 6696349, at *6 (N.D. Tex. Dec. 20, 2018). The Court finds that whether Tart Labs knew Archer Review was a Texas resident is relevant and a fact issue that warrants jurisdictional discovery.

UWorld argues that Tart Labs had more extensive contacts with Archer Review than the declaration stated, including that Tart Labs had some control over Archer Review, and that jurisdictional discovery is warranted when "a nonresident directed or controlled another defendant's conduct in the same lawsuit." Dkt. No. 70 at 13-15. UWorld asserts it will find that

- Tart Labs and another contractor were responsible for the illustrations in the Archer Review's Nursing Review Suite. *See, e.g.*, Dkt. 54 at ¶¶ 12, 117-19.

- Tart Labs was responsible for the look and feel of Archer Review's Nursing Review Suite. *See, e.g.*, *id.* at ¶¶ 70, 102-04, 110.
- Tart Labs remains an active participant in Archer Review's shared files, Slack channels, groups, and other forms of collaboration on development and maintenance of Archer Review's Nursing Review Suite.
- Tart Labs developed, shared, and implemented ideas for modifications to Archer Review's Nursing Review Suite, based on UWorld's software, at various times between 2019 and 2023. *See, e.g.*, *id.* at ¶¶ 71, 75-84, 102-04, 110.
- Tart Labs interacted with Archer Review's customers in its role providing customer support or marketing.
- Tart Labs prepared the terms of use for Archer Review's website. *See, e.g.*, *id.* at ¶¶ 69-70.

*Id.* at 14.

Some of the facts that UWorld seeks to establish, such as Tart Labs's interaction with Archer Review's customers in Texas, would support a finding of personal jurisdiction. And others concern the contract that Tart Labs had with Archer Review, including the extent of its agreement and consideration of future contacts, which is relevant to a finding of personal jurisdiction. And so, the Court will permit jurisdictional discovery on these issues.

As stated in the declaration, Mr. Prabu traveled to Texas, stayed with Mr. Koduru, accessed UWorld's applications while in Texas, and helped Archer Review respond to a legal letter from UWorld. *See* Dkt. No. 70 at 15.

UWorld asserts that there is a fact issue as to why Mr. Prabu traveled to Texas and the extent of its "involvement in actions giving rise to UWorld's claims while in Texas." Dkt. No. 76 at 8; *see* Dkt. No. 70 at 16. The Court finds this is relevant to the personal jurisdiction analysis and a fact issue. If UWorld's allegations are true, this would support a finding of personal jurisdiction. *See Valtech*, 2016 WL 2958927, at

*2 (finding that travel to Texas to meet with a Texas company is relevant to finding a preliminary showing of personal jurisdiction).

But the Court agrees that Mr. Pradu's travel to Arizona for the award ceremony with Archer Review does not assist in finding personal jurisdiction and so will not allow further discovery on this claim.

And the Court is persuaded that, although UWorld has extensive discovery from Archer Review, some discovery regarding Tart Labs's contacts with Archer Review and documents reflecting Tart Labs's marketing to Archer Review's customers as well as regarding the extent, if any, of Tart Labs's control over may be absent.

## Conclusion

Without yet making any recommendation as to whether UWorld has made the required showing of specific jurisdiction, the Court GRANTS IN PART AND DENIES IN PART Plaintiff UWorld's Motion for Discovery. The Court GRANTS UWorld's request to obtain through appropriate Federal Rule of Civil Procedure 34 requests information, including (as appropriately tailored) UWorld's proposed Request for Production Nos. 1-3 and 5-10, and a Federal Rule of Civil Procedure 30(b)(6) deposition covering appropriate topics, as discussed above, including (as appropriately tailored) UWorld's proposed Topic Nos. 1-9.

All jurisdictional discovery must be completed by **May 2, 2024**, and any motion raising a dispute that may arise regarding this jurisdictional discovery must be filed by **April 25, 2024**.

SO ORDERED.

-14-

DATED: March 21, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE